IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KIM SOULE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cv-01031-DGK |
| | ) | |
| LANGLEY RECYCLING, INC., | ) | |
| and JOHN LANGLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION

This lawsuit arose after Defendant Langley Recycling, Inc. ("Langley Recycling") terminated Plaintiff's employment. Plaintiff alleges Langley Recycling discriminated and retaliated against her, in violation of the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq.*, and that its owner and CEO, John Langley, disseminated sexually explicit images of her without her consent, in violation of Mo. Rev. Stat. § 573.110.

Now before the Court is Defendants' motion to compel arbitration (Docs. 14, 18).[1] For the following reasons, the motion is GRANTED IN PART.

### Background

In June 2013, Langley Recycling hired Plaintiff to assist Mr. Langley, who is physically disabled. Plaintiff and Langley Recycling entered into an Employment Agreement ("the Agreement"), which contains an arbitration provision in bold, oversized print, stating:

> **Any controversy or claim arising out of or relating to this Agreement shall only be settled by arbitration in accordance with the rules of the American Arbitration Association, one (1) arbitrator, and shall be enforceable in any court having competent jurisdiction.**

---

[1] Langley Recycling originally filed the motion to compel arbitration (Doc. 14), but Mr. Langley filed a notice to join the motion soon thereafter (Doc. 18).

(Doc. 15-1 at ¶ 9). The end of the Agreement also contains a sentence in bold, capitalized, and large font: **THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES**. *Id*. Plaintiff and Mr. Langley, in his capacity as CEO and owner of Langley Recycling, signed the Agreement. *Id*.

About a month after being hired, Plaintiff and Mr. Langley engaged in a romantic, sexual relationship and began exchanging sexually explicit photos. At some point in the relationship, Mr. Langley sent Plaintiff's explicit photos to another man without her consent. Ultimately, they broke up, and Mr. Langley terminated Plaintiff's employment with Langley Recycling soon after. He then posted another explicit photo of Plaintiff on the internet without her consent.

Plaintiff asserts claims of discrimination and retaliation against Langley Recycling, and one count nonconsensual dissemination of private sexual images against Mr. Langley. Defendants now request this Court compel arbitration and stay this proceeding.

**Standard**

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–307, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When presented with a motion to compel arbitration, a federal court asks "only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016) (citations and quotations omitted). If the answer to both questions is yes, the court must order arbitration. *Id*.

**Discussion**

Defendants move to stay the litigation and compel arbitration on the grounds that the Agreement contains a mandatory, binding arbitration clause. Mr. Langley asserts that although he

was not a signatory to the Agreement, it also binds the claims made against him because they are so related to the claims against Langley Recycling.

Plaintiff responds that the Agreement is unconscionable and that the causes of action do not fall within the scope of the arbitration provision. She also argues that the claim against Mr. Langley individually cannot be compelled to arbitration because he did not sign the Agreement. The Court addresses whether Plaintiff's claims against Langley Recycling should proceed to arbitration before turning to her claims against Mr. Langley.

## I.     The Court orders Plaintiff's claims against Langley Recycling to arbitration.

### A.     The arbitration provision is valid.

Validity turns on the application of state contract law. *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015). "The elements required to form a valid contract in Missouri[2] are offer, acceptance, and bargained for consideration." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. Ct. App. 2010) (citations and quotations omitted). The party moving to compel arbitration bears the burden of proving these elements. *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. Ct. App. 2013).

In this case, Langley Recycling offered the Agreement, which provided that Langley Recycling would hire Plaintiff to care for Mr. Langley in exchange for wages and other benefits. The Agreement also provided that the parties mutually promise to arbitrate claims arising out of the Agreement. Plaintiff accepted Langley Recycling's offer, and signed the Agreement, as did Mr. Langley, in his official capacity as CEO of Langley Recycling. Where an individual is employed under an employment agreement containing an arbitration clause, sufficient consideration exists to constitute valid bargained-for-consideration. *See Soars v. Easter Seals*

---

[2] The Court agrees with the parties that Missouri law governs whether a valid contract was formed. *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019); *Baker v. Bristol Care*, Inc., 450 S.W.3d 770, 774 (Mo. 2014).

3

*Midwest*, 563 S.W.3d 111, 115 n.3 (Mo. 2018), *abrogated on other grounds by Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432 (Mo. 2020. Thus, there was offer, acceptance, and bargained-for-consideration. The arbitration provision is valid.

      **B.**      **The arbitration provision is not unconscionable.**

Recognizing the validity of the arbitration provision, Plaintiff asserts that it is unconscionable and, therefore, unenforceable. Plaintiff's argument is unavailing.

"[G]enerally applicable state law contract defenses, such as fraud, duress and unconscionability, may be used to invalidate arbitration agreements without contravening the FAA." *Whitney v. Alltel Commc'ns, Inc.,* 173 S.W.3d 300, 308 (Mo. Ct. App. 2005) (quotation omitted). Under Missouri law, the party asserting the defense must prove some level of both procedural and substantive unconscionability to invalidate a contract. *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. 2015). "Procedural unconscionability involves the contract formation process; substantive unconscionability refers to undue harshness in the terms of the contract." *Leonard v. Del. N. Companies Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017). Unconscionability is "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Eaton*, 461 S.W.3d at 432 (internal quotation marks omitted).

Procedural unconscionability focuses on things such as "high pressure sales tactics, unreadable fine print, or misrepresentation, among other unfair issues in the contract formation process." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. 2006). In this case, Plaintiff argues the arbitration provision is procedurally unconscionable because she had no opportunity to negotiate its terms, and it was presented to her after she had verbally committed to the job, sublet her apartment, moved to Florida, and arranged shipment of her belongings to

Florida.  As an initial matter, Plaintiff presents no evidence that she ever sought to negotiate any of the terms of the Agreement or that anyone told her the terms were nonnegotiable.  She has also not alleged Langley Recycling committed any misrepresentations in the bargaining process, and she does not deny that the arbitration provision was in plain language and in large, bold print.

That Plaintiff had already taken action to secure her employment in Florida before signing the Agreement is not enough to make the provision procedurally unconscionable.  While Langley Recycling arguably had a superior bargaining position, the lack of relative bargaining power—without evidence of "'high pressure sales tactics to coerce'"—is not enough to render a contract procedurally unconscionable.  *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) (quoting *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009)) (analyzing a contract under Missouri law and finding it was not procedurally unconscionable despite inequities of power).

The arbitration provision is also not substantively unconscionable.  Plaintiff claims she never reasonably expected to be required to maintain a sexual relationship with Mr. Langley or that he would disseminate sexual images of her, and, thus, the Agreement is substantively unconscionable.  But the issue is not whether Plaintiff reasonably expected the alleged harm she suffered; the issue is whether she reasonably expected to submit claims against the company to arbitration and whether the arbitration provision, as written, contained unconscionable terms.  Plaintiff has offered no evidence that the terms in the arbitration provision were contrary to her reasonable expectations or intentions.  Thus, it is not substantively unconscionable.  *See Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 108 (Mo. Ct. App. 2003) ("An agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair.").

Accordingly, Plaintiff has not met her burden of proving the arbitration provision is unconscionable.  It is therefore enforceable.

### C. The dispute falls within the terms of the arbitration agreement.

The Court must next determine whether the MHRA claims against Langley Recycling fall within the terms of the arbitration provision. Plaintiff first claims it does not because the Agreement was terminated prior to her filing this lawsuit. In other words, she contends the Agreement provides for arbitration only for claims filed before her termination. But such an interpretation is contrary to law. There is "a presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication." *Koch v. Compucredit Corp.*, 543 F.3d 460, 465 (8th Cir. 2008) (quoting *Litton Fin. Printing v. NLRB*, 501 U.S. 190, 205 (1991)). Because no such express or implied negation occurred here, the arbitration provision survives. Indeed, most employment disputes materialize after the employment relationship ends, so it would make little sense for the parties to have agreed to arbitrate only those claims asserted during the employment relationship.

Second, Plaintiff argues her claims against Langley Recycling do not fall within the scope of the Agreement. Of course, Langley Recycling's ability to compel arbitration is limited to "matters and disputes arising out of the relationship governed by contract." *Litton*, 501 U.S. at 204. A postexpiration dispute arises out of the contract if, among other things, it involves "facts and circumstances that arose before expiration." *Id*. In this case, the arbitration provision requires arbitration of "[a]ny controversy or claim *arising out of or relating to* this Agreement." (Doc. 15-1 at ¶ 9) (emphasis added). Plaintiff's claims against Langley Recycling for discrimination and retaliation arose prior to the termination of the Agreement and are founded on the employer-employee relationship between the parties, which would not exist absent the Agreement. Such claims, therefore, necessarily relate to the Agreement.

Plaintiff's claims against Langley Recycling must be submitted to arbitration.

6
Case 4:19-cv-01031-DGK   Document 31   Filed 06/11/20   Page 6 of 9

## II. The Court does not order Plaintiff's individual claim against Mr. Langley to arbitration.

This Court must also determine whether the arbitration provision is enforceable as to Plaintiff's claim against Mr. Langley individually. Plaintiff argues that her claim against Mr. Langley should not be submitted to arbitration because he was a nonsignatory to the Agreement in his individual capacity and the only claim against him—dissemination of private sexual images—does not fall within the scope of the Agreement. Mr. Langley responds that a nonsignatory can enforce an arbitration clause against a signatory in the circumstances present here and contends the claim against him is within the scope of the Agreement. These arguments are unavailing.

"The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). Missouri courts have cited with approval the Eighth Circuit's decision in *CD Partners, LLC v. Grizzle*, which held that nonsignatories can be bound to an arbitration provision in two contexts: (1) when "'the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided'" and (2) "'when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory.'" 424 F.3d 795, 798 (8th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).[3]

---

[3] *See Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361 (Mo. 2006) (finding a nonsignatory may be able to compel arbitration against a signatory to an agreement when "the very basis of the claim against the non-signatory was that it had breached duties and responsibilities purportedly assigned it by the agreement"); *see also GE Energy Power Conversion France SAS, CORP., fka Converteam SAS v. Outokumpu Stainless USA, LLC, et al.*, No. 18-1048, slip op. at 4 (S. Ct. June 1,

7
Case 4:19-cv-01031-DGK   Document 31   Filed 06/11/20   Page 7 of 9

In *Grizzle*, the plaintiff sued nonsignatory officers as proxy for the signatory company because the company had gone bankrupt. 424 F.3d at 797. The plaintiff's tort allegations all arose out of officers' conduct while acting for company, and the "core of the dispute" was the officers' conduct in fulfilling the company's promises established by the agreement between the plaintiff and the company. *Id*. The Eighth Circuit held that the nonsignatory officers of the company could enforce an arbitration provision of the agreement against the plaintiff under both factors because the relationship between officers and company was "sufficiently close," and the basis of the claims was that the officers had breached duties assigned to it by the agreement. *Id*.

Neither circumstance identified in *Grizzle* applies here. As for the first *Grizzle* factor, the Court finds that the relationship between Mr. Langley and Langley Recycling is not so sufficiently close that allowing the individual claim against Mr. Langley to proceed in litigation would eviscerate the underlying arbitration agreement. Mr. Langley is not being sued as a proxy or substitute defendant for Langley Recycling, and the underlying cause of action is not based on actions that Mr. Langley took on the company's behalf.

The second factor is also not present. Plaintiff's claim against Mr. Langley does not rely upon, refer to, or presume the existence of the Agreement or an employment relationship. The Court is not convinced otherwise by Mr. Langley's reliance on *Finnie v. H&R Block Fin. Advisors, Inc.*, 307 F. App'x 19, 20 (8th Cir. 2009), a case where the Eighth Circuit, relying on *Grizzle*, summarily held that the state discrimination claims filed jointly against a nonsignatory employee and his signatory company could be compelled to arbitration. Unlike in *Finnie*, Plaintiff did not file discrimination claims—which certainly arise from the employment context—against Mr.

---

2020) (stating equitable estoppel allows nonsignatories to compel arbitration where a signatory must rely on the terms of the written agreement to assert claims against the nonsignatory).

Langley.  And, unlike MHRA claims, Plaintiff's tort claim against Mr. Langley is not reliant on or related to the Agreement or either party's employment status.

Accordingly, the Court finds that the claims against Mr. Langley, as a nonsignatory, cannot be compelled to arbitration.  For these same reasons, the Court finds that even if the Court could enforce the arbitration agreement against Mr. Langley, Plaintiff's claim against him falls outside the scope of the arbitration provision.

## Conclusion

The motion is GRANTED IN PART.  The Court stays Plaintiff's claims against Langley Recycling only and compels them to arbitration.  The parties shall update the Court on the status of the arbitration proceedings every sixty days.  Plaintiff's claim against Mr. Langley is not compelled to arbitration.

**IT IS SO ORDERED.**

Date:  June 11, 2020                             /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT